T.C. Memo. 2004-67

UNITED STATES TAX COURT

GARY LEE COLVIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11412-01.                   Filed March 17, 2004.

Gary Lee Colvin, pro se.

<u>Daniel N. Price</u> and <u>T. Richard Sealy III</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax of $1,918 for 1997 and $1,072 for 1998.  The issues for decision are:  (1) Whether respondent's failure to accept petitioner's amended Federal tax returns was an abuse of discretion; and (2) whether any of petitioner's legal expenses and costs are deductible.  The

Court considers petitioner to have conceded respondent's determinations disallowing amounts of itemized deductions in both years and "other expenses" in 1997 because petitioner did not address these issues at trial or on brief. See <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370 (1993); <u>Sundstrand Corp. v. Commissioner</u>, 96 T.C. 226, 344 (1991); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 n.19 (1988).

In his opening statement, petitioner alleged that respondent's statutory notice is so vague as to deprive petitioner of proper notice or the Court of jurisdiction. Upon questioning by the Court, petitioner cited no basis for his position but represented that he would brief the issue. He did not, and the Court finds that petitioner has abandoned this issue. See <u>Bradley v. Commissioner</u>, <u>supra</u>; <u>Sundstrand Corp. v. Commissioner</u>, <u>supra</u>; <u>Rybak v. Commissioner</u>, <u>supra</u>.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.

The stipulated facts and exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Cedar Park, Texas.

FINDINGS OF FACT

For 20 years petitioner's mother, Rhoda Colvin, resided in a unit of a condominium development known as Pennant Village (PV), in San Diego, California. Her address at the condominium was

6404 Erlanger Street.  There are a total of 128 units of townhouses, duplexes, and single-family detached residences in two "Phases" of PV.  Phase I is made up of 76 single-family, single-level, freestanding or duplex units.  Phase II has 52 units, 13 groups of fourplex townhouses.  The subject residence was a single-family detached residence in Phase I.

By quitclaim deed dated November 27, 1995, Arnal Colvin and Rhoda Colvin, as trustees of the Colvin Family Trust, sold the subject condominium to petitioner.  The deed conveyed, according to its terms, three "parcels":  (1) An undivided one seventy-sixth interest in each of lots 748, 750, and 751 of University City Unit No. 8 with nonexclusive easements for use and enjoyment of certain common areas; (2) unit 67 of the condominium development; and (3) exclusive right to possession and occupancy of the portions of lots 748, 750, and 751 designated 67-B and 67-C.

Rhoda Colvin is an accountant, bookkeeper, and return preparer who has a college degree in accounting.  She prepared petitioner's tax returns for 1997 and 1998.  She also set up and maintained the books of account for the PV homeowners association (association) for 8 years beginning in 1976.  During the period when she was maintaining the books of the association, the finances of Phase I and Phase II were accounted for separately.

The separate accounting practice became a controversial issue, however, around 1993.

The balconies of the Phase II units began to deteriorate to the point that they became a safety hazard. They had to be repaired or replaced. The governing document of the condominium development, the Declaration of Covenants, Conditions, and Restrictions and Power of Attorney of Pennant Village (CC&Rs) dating from 1976, assessed charges and assessments to unit owners in Phase I and Phase II in equal one one-hundred-twenty-eighth shares. In 1995 the association proposed a change to the CC&Rs that would reduce the Phase II assessment to 90 percent of the Phase I assessment. Some of the owners of Phase I units came to believe that the association was improperly using cash reserves from Phase I to make repairs to condominiums in Phase II.

For a period before petitioner's November 1995 purchase of the condominium, he had rented it from the family trust. Petitioner had attended meetings of the association and felt that there were "irregularities" in the adoption of the "new" CC&Rs as well as the election of certain members of the association's board of directors. Petitioner approached the board at association meetings to address the problems he perceived. In his view, members of the board refused to allow him to formally address the board, refused to allow him to vote at meetings, alleged that he did not actually purchase his property, called

him a liar, harassed him in other ways, belittled him, derided him, and threatened him.

When asked, the board refused to turn over to petitioner any financial information related to the maintenance of the balconies in Phase II. According to petitioner, "the harassment became so bad that in September of 1996, I filed an action pro se against the homeowners association." According to petitioner, the suit, filed in the Federal District Court for the Southern District of California, was "in direct response to the extensive harassment and retaliation that I and my family had incurred as a result of my inquiries."

Information petitioner obtained in the Federal District Court action convinced him that the association had mishandled the finances of PV homeowners. To follow up on his suspicions, petitioner obtained to assist him a lawyer who specializes in real estate law. Petitioner wanted the lawyer to go "after the homeowners association for a full accounting of their finances, and also related to the CC&Rs."

Petitioner's real estate attorney caused the Federal suit to be dismissed without prejudice. In late 1997 petitioner pursued alternative dispute resolution under California law. Petitioner filed suit for declaratory relief in State court when the association refused to participate in mediation. The suit in State court asked for nullification of the "new" CC&Rs, a stop to

overcharges for water and sewer services, and a direction that the association maintain the common area around petitioner's condo.

As a result of his litigation in State court, petitioner became convinced that the association had been "selling licences and easements to the common areas in the tens of thousands of dollars." He was also convinced that the association had a profitable operation of the on-site laundry facilities.

Petitioner is a "network engineer". He reported on his Federal income tax returns wages from his employment with Daou Systems in 1997 and Network Computing Device, Inc., in 1997 and 1998. He also attached to his tax returns for those years Schedules C, Profit or Loss from Business, for "Colvin Business Services II". The Schedules C reported cost of goods sold in excess of gross receipts for both years (gross receipts for 1998 were zero) and amounts for legal and professional service expenses.

Some of the legal expenses petitioner deducted relate to the State court litigation against the association. Other of the legal expense deductions relate to a suit by petitioner to recover wages from a former employer. Petitioner's mother, in preparing his return, tried to allocate the various legal expenses to the suit against the employer and to the suit

against the association. Because the billing records from the attorney did not adequately describe the services performed, however, she was unable to allocate the expenses.

During the audit process, petitioner's mother prepared for him amended returns in which the deduction for legal expenses was reduced by two thirds. The Appeals Office handling petitioner's case refused to accept the amended returns.

OPINION

Because the Court decides the issues in this case without regard to the burden of proof, section 7491(a) is inapplicable.

Petitioner's Amended Returns

Petitioner complains that he offered amended returns for the years at issue to an Appeals officer who refused to accept them. Such a refusal, he implies, somehow affects respondent's determination here. The Court disagrees. Even though the Commissioner has administratively permitted their use, the filing of amended returns is not a matter of right as there is no statutory provision expressly authorizing them to be filed. Badaracco v. Commissioner, 464 U.S. 386, 393 (1984); Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir. 1977). Acceptance of amended returns has repeatedly been held to be a matter which is within the discretion of the Commissioner. Koch v. Alexander, supra at 1117; Miskovsky v. United States, 414 F.2d 954, 955 (3d Cir. 1969); Terrell v. Commissioner, T.C. Memo. 1986-507; see

also <u>Hillsboro Natl. Bank v. Commissioner</u>, 460 U.S. 370, 380, n.10 (1983) (citing <u>Koch v. Alexander</u>, <u>supra</u>).  Petitioner has not shown that respondent abused his discretion here.

<u>Deductions for Legal Expenses</u>

In the notice of deficiency respondent determined that petitioner has not shown that the legal expense deductions on Schedules C of his 1997 and 1998 tax returns were deductible as ordinary and necessary business expenses.

Petitioner contends that the law suit against the association, for which funds were expended, was intended to retrieve "taxable income" and tax losses and credits and therefore the expenses are deductible under section 212 or 216. He argues in his brief:

> Petitioner's litigation with the PVHA was motivated by the desire to force the PVHA to provide a complete disclosure of its finances and accounting records so that Petitioner could not only accurately determine his losses and thus his income tax liabilities, but to obtain his share of over $500,000 in misappropriated funds, tax credits, and non-exempt income.

Petitioner further admonishes the Court to focus on "what that effort would have ultimately produced if Petitioner had been successful."

<u>Deduction Under Section 212</u>

The Court must decide whether the legal fees petitioner incurred are deductible under section 212, which provides:

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--

(1) for the production or collection of income;

(2) for the management, conservation or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

It is petitioner's contention that his expenditure of legal fees in the State court litigation was the first step in a quest for the production or collection of income and in connection with the determination, collection, or refund of a tax. The focus of the Court will therefore be on the first and third paragraphs of section 212.

A taxpayer may not, under section 212, deduct legal fees that are personal expenses. Sec. 262(a). Legal fees incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. Sec. 1.212-1(h), Income Tax Regs.

The Supreme Court, in United States v. Gilmore, 372 U.S. 39 (1963), held that the characterization of legal expenses depends on the activities from which the claim arises for which the expenses were incurred. The Court said: "The origin and character of the claim with respect to which an expense was

incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test".  Id. at 49.

The "origin-of-the-claim" rule is not "a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts."  Boagni v. Commissioner, 59 T.C. 708, 713 (1973) (fn. ref. omitted).  The question to be answered is, out of what kind of transaction the claim arose.  See id.

When determining the origin of the claim, the Court must consider the issues, the nature and objectives of the potential action, the defenses asserted, the purpose for the legal fees, the background of the claim out of which the dispute arose, and "all facts pertaining to the controversy."  Id. (citing Morgan's Estate v. Commissioner, 332 F.2d 144, 151 (5th Cir. 1964)); Barr v. Commissioner, T.C. Memo. 1989-420.  The line demarcating deductible, and nondeductible expenditures is "often shadowy", and "It would be idle to suggest that all the authorities in this field can be reconciled."  Ruoff v. Commissioner, 30 T.C. 204, 208 (1958), revd. on other grounds 277 F.2d 222 (3d Cir. 1960).

Petitioner argues that if he had obtained certain financial documents through his lawsuit against the association, he would then have been in a position to pursue items of income and tax losses and credits.  The relevant question, however, is in

connection with what the legal expense arose, not what
consequences might have resulted from the taxpayer's claim.  See
United States v. Gilmore, supra at 48; Patch v. Commissioner,
T.C. Memo. 1980-11.

It is the determination of the Court that the expense here
arose in connection with the management, conservation, or
maintenance of property held for use by petitioner as a personal
residence.  Assuming without deciding that an ultimate
consequence of petitioner's litigation might have been the
recovery of taxable income, or the determination, collection, or
refund of a tax, the claim for which the expense arose was not in
connection with those activities.  Petitioner was upset by what
he perceived to be the failure of the association to properly
manage, conserve, or maintain the condominium property where he
resided.  The suit in State court asked for nullification of
governing documents of the condominium and the CC&Rs, a stop to
perceived overcharges for maintenance assessments and water and
sewer services, and a direction that the association properly
maintain the common area around petitioner's condominium unit.

For the reasons stated above, the Court concludes that none
of the legal expenses for the State litigation were incurred in
connection with an activity described in section 212.

Although petitioner might be entitled to deduct legal
expenses incurred in connection with his former employment, he

has identified neither the amount nor the nature of those expenditures.

### Deduction Under Section 216

Petitioner has failed to explain how section 216, Deduction of Taxes, Interest, and Business Depreciation by Cooperative Housing Corporation Tenant-Stockholder, has any application here. The Court can find no legal or factual relevance of section 216 to this case.

The Court has considered the other arguments raised by petitioner and has found them to be without merit.

### Conclusion

Respondent's determination that petitioner is not entitled to deduct legal expenses for 1997 and 1998 is sustained.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.