T.C. Memo. 2012-332

UNITED STATES TAX COURT

JOSEPH R. POSLUNS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13443-10.                        Filed December 3, 2012.

Joseph R. Posluns, pro se.

<u>William F. Castor</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a $5,994 deficiency and a

$1,198.80 section 6662(a) penalty relating to petitioner's Federal income tax for

2007.  A portion of the deficiency was based on self-employment tax, which

respondent conceded in the answer.  The issues for decision are whether petitioner

**[\*2]** adequately substantiated vehicle, travel, and "other" unreimbursed employee business expenses and whether he is liable for the penalty. Unless otherwise indicated, all section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Petitioner resided in Arkansas when he filed his petition. During 2007, he was employed by the University of Maryland University College (UMUC), Graduate School of Management & Technology, Adelphi, Maryland, as an associate professor, teaching online courses in the fields of Business & Executive Programs. He was also employed by National-Louis University in Chicago, Illinois.

UMUC's travel policy operative during 2007 stated the following:

I. Definitions

    A. In-State Travel is defined as:

    Travel within the State of Maryland or within the
    Washington, DC Metropolitan Area and not
    including an overnight stay.

**[*3]**  B.  Out-of-State Travel is defined as:

> 1.  Travel to destinations that are outside the State of Maryland and/or Metropolitan Washington, DC; or

> 2.  Travel that requires an overnight stay, even if the overnight location is within the State of Maryland or Metropolitan Washington, DC.

## II.  Approval

Travelers must obtain written approval from their supervisor for out-of-state travel prior to initiating travel arrangements or commencing the travel.  Approval is necessary for out-of-state travel even if there is no cost to UMUC.  The UMUC Travel Form is to be utilized to obtain this approval.  The purpose of the travel, regardless if in-state or out-of-state, must be clearly identified on the UMUC Travel Form for out-of-state travel and on the Expense Reimbursement Form for all travel.

## III.  Reservations and Ticketing

A.  Travelers must use the UMUC designated travel agency/coordinator for reservations and ticketing such as hotels, air, train tickets and auto rentals.  Travelers and the designated travel agency/coordinator must ensure that all arrangements are at the least expensive logical fare for the service using the most direct route (or other reasonable routing that results in a lower fare).  Travelers are expected to make advance bookings and request governmental/educational discounts.  Travelers must take advantage of "back-to-back" airfares to get the best possible rate whenever possible.

B.  If travel plans change, UMUC will pay cancellation penalties provided that the change was made for the convenience of UMUC or necessitated by emergency circumstances.  Some airlines will refund purchase price of "non refundable" tickets if the change resulted from

**[*4]** an emergency situation.  The employee (or unit) should contact the travel agency/coordinator to pursue possibility of refunds resulting from an emergency situation.

IV.  Lodging Reimbursement

The cost of lodging will be reimbursed on the basis of receipts at the single room rate.  When choice of lodging facilities is available, the traveler is expected to select a moderately priced hotel.  Moderately priced lodgings include Ramada Inn, Fairfield Inn, and Hampton Inn.

V.  Meal Reimbursement

A.  Domestic Travel

1.  The traveler will be reimbursed at the per diem rates established by the Board of Regents.  A partial day's travel is eligible for the appropriate meal(s) consumed when the travel time encompasses four hours and the traveler is away from home or place of work two hours before and two hours after the meal.  The travel must begin prior to 6 a.m. for breakfast or prior to 10 a.m. for lunch, and it must end after 8 p.m. for dinner.

2.  With receipts, the out-of-state traveler may claim reimbursement above the standard per diem rates when circumstances necessitate high cost meals.  The traveler may be reimbursed up to actual cost with detailed receipts, when approved by the supervisor as reasonable and necessary.  In no case will the amount reimbursed exceed $50 per day.

3.  The traveler cannot claim the per diem reimbursement for meals that are included in other travel arrangements such as meals in flight or meals included in the conference registration fee.

**[\*5]** 4.  The traveler will be reimbursed for the actual cost of a business related meal incurred on behalf of a non-state employee.  The traveler's meal will be reimbursed in accordance with this travel policy.

5.  The traveler will not be reimbursed for alcoholic beverages.

B.  International Travel

1.  The traveler will be reimbursed at actual cost with receipts or at the applicable U.S. Department of State meal and incidental (M&IE) rate without receipts, in accordance with the USM policy.

VI.  Vehicles

A.  UMUC Fleet Vehicles

1.  The traveler must use a UMUC fleet vehicle whenever possible.

2.  Whenever possible, the traveler must verify with the UMUC fleet manager the availability of fleet vehicles prior to renting a   car.

B.  Personal Vehicles

1.  All personal vehicles must be properly insured.

2.  Mileage will be reimbursed at the Board of Regents' approved rate for miles driven which exceed the normal daily commute miles. Mileage must be calculated using the most direct route.  Commuting mileage to the normal work site is not reimbursable.  No mileage will be reimbursed for travel less than five miles one way if origination or destination is a local University of Maryland System site.

[*6]  3.  Multiple travelers to one destination should carpool whenever feasible.

4.  Traveler should verify that personal vehicle usage is the most economical mode of transportation.

C.  Car Rentals

1.  The traveler is expected to rent the least expensive car that will accommodate the trip's requirements.

2.  Rentals should be arranged through the UMUC designated travel agency/coordinator.

3.  Multiple travelers to one location should carpool whenever feasible.

4.  The traveler should not purchase additional insurance for a car rental within the U.S.  Insurance is provided by the State.

5.  The traveler will be reimbursed for gas purchased at a gas station with receipts.  If feasible, the traveler should fill the gasoline tank at a gas station prior to returning the car to the rental agency.

VII.  Travel with Spouses

Expenses incurred by spouses traveling in an unofficial capacity are not reimbursable.

VIII.  Miscellaneous Expenses

A.  Parking Fees - Receipts should be requested for reimbursement of garage or lot parking.  Travelers to airports should take advantage of long term parking lots whenever available.

[*7] B.  Taxi/Shuttle Service Receipts should be requested for reimbursement of taxi and airport shuttle service.

C.  Telephone Calls - Business related telephone calls will be reimbursed.

D.  Laundry - The cost of laundry, cleaning and pressing is reimbursable with receipts.

E.  Gratuities - Moderate gratuities will be allowed for baggage and/or when the traveler is transporting UMUC materials.

XI.  Documentation required for Travel:

A.  Airline/Rail Boarding Pass or detailed receipt;

B.  Hotel itemized invoice/receipt

C.  Car Rental Itemized Receipt; itemized gas station receipt if filled prior to returning car to rental agency

D.  Meal-Itemized Receipt if asking for reimbursement of actual expenses

E.  Registration Form with confirmation of registration

F.  Parking Fees - Receipts should be requested for reimbursement of garage or lot parking

G.  Taxi/Shuttle Service Receipts

H.  Telephone Calls - Business related telephone calls will be reimbursed; itemized invoice from hotel or phone provider required

I.  Laundry - The cost of laundry, cleaning and pressing is reimbursable with receipts

**[*8]** IX.  Policy Exceptions

A.  The respective Member of the Executive Committee must approve exceptions to this Policy resulting in a claim larger than $500. The Associate Vice President, Finance, may approve all other exceptions.

During 2007, petitioner received reimbursements from UMUC totaling $1,248.17.

Although petitioner performed services for UMUC under the terms of several appointment letters, none of the documents suggested that his employment related to contracts with the U.S. Department of Defense or required travel to military bases.

Petitioner prepared and filed a Form 1040, U.S. Individual Income Tax Return, for 2007 as "married filing separately" and showing Quebec, Canada, as his address.  He reported wages from UMUC and from National-Louis University.  On Schedule C, Profit or Loss From Business, he identified his business as "development of online educational programs and instructions" and claimed a loss deduction of $45,101.34.  Among the expenses claimed were $4,785 for vehicles, $3,650.50 for travel, and $12,912 of "other expenses" as follows:

| [*9]                                                      Expense | Amount |
|-----------------------------------------------------------------|--------|
| Conferences                                                     | $1,652 |
| Professional development                                        | 1,221  |
| Research materials (books, www, mags, reports)                  | 1,395  |
| Computer software, simulations, Webinar participation           | 2,105  |
| Revenue-enhancing presentations                                 | 1,650  |
| Telephone, cable, Internet                                      | 1,940  |
| Research and development (focus groups)                         | 1,175  |
| Shipping, postage (UPS, Fed Ex)                                 | 464    |
| Registration of competitive online programs                     | 1,310  |
| Total                                                           | 12,912 |

After his 2007 return was filed, it was audited by the Internal Revenue Service (IRS). During the course of the audit, petitioner submitted a Form 1040X, Amended U.S. Individual Income Tax Return, on which he claimed as employee business expense deductions the same items previously claimed on Schedule C. Thereafter, the IRS sent a notice of deficiency disallowing the amounts claimed for vehicle expenses, travel, and "other expenses". Because the deficiency was determined in relation to petitioner's original return, the notice determined self-employment tax liability and allowed a deduction for one-half of the amount of that tax.

Procedural Matters

Events occurring after the petition is filed and at trial ordinarily are not included in the findings of fact. See Rule 151(e). In this case, however, certain

**[*10]** procedural matters are relevant to our determinations about the reliability of the evidence.

The petition was filed June 14, 2010. By notice served August 13, 2010, the case was set for trial in Little Rock, Arkansas, on January 10, 2011. Included with the notice of trial was the Court's standing pretrial order, which included the following provisions:

> Stipulation. It is ORDERED that all facts shall be stipulated (agreed upon in writing) to the maximum extent possible. All documents and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used only to impeach (discredit) a witness. Either party may preserve objections by noting them in the stipulation. If a complete stipulation of facts is not ready for submission at the start of the trial or when otherwise ordered by the Court, and if the Court determines that this is due to lack of cooperation by either party, the Court may order sanctions against the uncooperative party.

> Trial Exhibits. It is ORDERED that any documents or materials which a party expects to use (except solely for impeachment) if the case is tried, but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown.

Due to a weather-related delay in commencement of the session the case was called and recalled twice on January 11, 2011, and recalled again on January 12, 2011. The parties had not executed a stipulation. Petitioner did not have a

**[\*11]** log or other original receipts or substantiating documents, and he explained that they were in Canada. He moved for a continuance to return to Canada "to retrieve the supporting documents requested by the IRS pursuant to PETITIONER'S original tax for the year 2007." Petitioner's motion was granted.

By notice served September 12, 2011, accompanied by the Court's standing pretrial order, the case was set for trial in Little Rock, Arkansas, on February 13, 2012. On November 29, 2011, respondent served on petitioner a request for production of documents asking for, among other things:

> A list of any business trips taken or conventions attended during 2007.

> A description of the records maintained for travel and transportation expenses for 2007.

> For travel expense, copies of any and all records, including, but not limited to, logs, diaries, notebooks, receipts, cancelled checks, etc., reflecting: (1) the cost of each separate expense for travel, lodging, and meals; (2) the dates you left and returned for each trip and the number of days spent on business; (3) the destination or area of travel (name of the city, town, or other designation); and (4) the business purpose for the expense or the business benefit gained or expected to be gained.

> \* \* \* \* \* \* \*

> For transportation expenses, copies of any and all records, including, but not limited to, logs, diaries, notebooks, receipts, cancelled checks, etc., reflecting: (1) the cost of each separate expense (for car expenses, the cost of the car, the date you started using it for

**[\*12]** business, the mileage for each business use, and the total miles for the year); (2) the date of the expense; (3) your business destination and (4) the business purpose for the expense.

Petitioner responded on December 29, 2011, objecting to the requests on several grounds including that he had previously provided documents to the IRS, but indicating that he intended to produce a travel log within the next 21 days. Petitioner failed to produce any documents in accordance with the standing pretrial order. During the week of February 6, 2012, petitioner told respondent's counsel that he would not provide any documents prior to the trial date.

When the case was called on February 13, 2012, the parties still did not have a stipulation. Petitioner stated that he had shown his original log to respondent's counsel that morning. The case was recalled on February 14, at which time petitioner had the log and purported summaries of the log, but no original receipts. Petitioner then complained that respondent would not settle with him, asserting:

> There's a document that the IRS Commissioner said that anybody who goes after the IRS in Tax Court, we're going to try to get a minimum of $3,000 from. It conforms to the fact, this is a test case to try and water board me to concede. I offered to pay them, even though I don't owe them nothing, zero. I have the documentation that I sent them and I will show them, I owe them not a cent. But to say thank you for letting me work in this country, I offered to pay them. This case could have gone away a year ago.

**[*13]** Respondent's counsel replied that the case had not settled because substantiating documentation had not been received and that there were questions concerning the authenticity of the log.

The case was called for trial on February 15, 2012. At that time petitioner asserted that respondent's counsel had engaged in an inappropriate conversation with the Court's deputy trial clerk the previous day and that, when challenged, had called in Court security officers to intimidate petitioner.

Before and during trial and in his brief, petitioner asserted that he could not identify students with whom he met during 2007 because of the Family Educational Rights and Privacy Act of 1974, Pub. L. No. 93-380, sec. 513, 88 Stat. at 571, current version at 20 U.S.C. sec. 1232g (2006), or national security concerns.

OPINION

Preliminary Matters

In the petition and prior to trial, petitioner contended that the notice of deficiency is invalid because it was issued after he had submitted an amended return recharacterizing the disputed vehicle, travel, and other expenses as employee expenses rather than business expenses. Respondent has cited authorities holding contrary to petitioner's position, and petitioner has cited none supporting his position. See Fayeghi v. Commissioner, 211 F.3d 504, 507 (9th Cir. 2000), aff'g

[*14] T.C. Memo. 1998-297; Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir. 1977);  Pace v. Commissioner, T.C. Memo. 2010-272; Colvin v. Commissioner, T. C.  Memo. 2004-67, aff'd, 122 Fed. Appx. 788 (5th Cir. 2005).  The notice of deficiency is valid.

Before the first trial date, petitioner filed a motion to shift the burden of proof, citing section 7491.  That motion was denied.  In his posttrial brief, petitioner implicitly contends that respondent must prove that his claimed deductions are not permissible.  Section 7491(a) shifts to the Commissioner the burden of proof with respect to a factual issue only if the taxpayer introduces credible evidence and has complied with substantiation requirements, has maintained required records, "and has cooperated with reasonable requests * * * for witnesses, information, documents".  Sec. 7491(a)(2)(B).  Petitioner has not met the conditions for shifting the burden of proof, and it remains with him.  See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), aff'g T.C. Memo. 1972-133.

Respondent disputes petitioner's credibility based on his belated production of the log and the appearance of that log, the absence of original records, his vague and uncorroborated testimony, and his implausible accusations against respondent's counsel and Court security personnel.  We need not accept

**[\*15]** petitioner's testimony and may and do reject it because of the many indicia of unreliability. See Gaudiano v. Commissioner, 216 F.3d 524, 536 (6th Cir. 2000), aff'g T.C. Memo. 1998-408, vacated and remanded on another ground, 531 U.S. 1108 (2001); Fleischer v. Commissioner, 403 F.2d. 403, 406 (2d Cir. 1968), aff'g T.C. Memo. 1967-85; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). For example, one of petitioner's accusations against respondent's counsel was based on his alleged overhearing of a conversation with Court staff, even though he admitted that he is hard of hearing. The conversation he described certainly would be improper and is unlikely to have occurred, if at all, in open Court in petitioner's presence. The alleged conversation was denied by the alleged participants. We do not believe that it occurred.

Petitioner contends that he has been targeted under a program of the IRS that precludes settlement and attempts to force payment of excessive taxes. The efforts of respondent's counsel to settle this case are apparent from the transcripts of January 2011. As petitioner's inherently improbable accusations expand to more and more public servants, his perceptions become more and more questionable. His claims about his employment are not supported by the records of his employer, which he referred to as "fraudulent" but which were received pursuant to rules 803(6) and 902(11) of the Federal Rules of Evidence and 28 U.S.C. section 1746

**[\*16]** (2006) (declarations under penalty of perjury).  His refusal to identify persons with whom he allegedly met on various trips invites heightened scrutiny.  The central and decisive issue here, however, is whether petitioner's travel log is adequate to substantiate the expenses in dispute and to excuse the production of corroborating witnesses and other documentary evidence.

Petitioner insists that he presented copies of receipts substantiating his deductions to various IRS offices at the time he filed his original return and during the audit and to respondent's counsel.  He did not, however, produce for stipulation or at trial any such documents, despite having obtained a continuance to travel to Canada to retrieve them.  A trial before the Tax Court is a proceeding de novo; what petitioner may or may not have submitted with the return or during the audit is irrelevant.  See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).  Petitioner was cautioned by the Court several times before and during trial that what he had previously produced to the IRS was not to be considered and that he had to prove his case to the Court during the trial.  Yet the only actual receipts he produced were for mailings to the IRS after 2007, the year in issue.

**[\*17]** <u>Disallowed Deductions</u>

Section 6001 requires that a taxpayer keep such records as are necessary to establish his or her deductions. <u>See</u> sec. 1.6001-1(a), Income Tax Regs. Petitioner's vehicle and travel expenses, and certain of the types of expenses he reported as "other expenses", are deductible only if he satisfies the enhanced substantiation requirements of section 274(d). Section 274(d) requires a taxpayer to substantiate "by adequate records or by sufficient evidence corroborating the taxpayer's own statement" any expenses for travel and "with respect to any listed property (as defined by section 280F(d)(4))". Listed property includes "any computer or peripheral equipment", "any passenger automobile", and "any other property used as a means of transportation". Sec. 280F(d)(4)(A)(i), (ii), (iv); <u>see also</u> sec. 1.274-5(k)(7), Income Tax Regs. To satisfy the adequate records requirement, the taxpayer must maintain "an account book, diary, log, statement of expense, trip sheets, or similar record", as well as documentary evidence, such as receipts or paid bills. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985); sec. 1.274-5(c)(2)(iii)(A), Income Tax Regs. Each element of the expense or business use must be recorded at or near the time it occurs. Sec. 1.274-5T(c)(2)(ii), Temporary Income Tax Regs., <u>supra</u>. A taxpayer unable to produce adequate records may alternatively establish an element of an

[*18] expenditure by his own statement and "other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). In the case of listed property, those elements to be established are the amount of the expenditure, the amount of each business use, the date of the expenditure, and the business purpose. Sec. 1.274-5T(b)(6)(i)-(iii), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Credit card statements petitioner presented at trial were in petitioner's wife's name, and specific items listed on them disclosed only the name of the charging entity and not whether an expense was business or personal. Petitioner claimed that some of his travel was to military bases, but he testified specifically about only two items of travel expense. He contends that he spent the period from January 6 to February 28, 2007, in Majorca, Spain, where he went "to talk about the cyber-warfare program and recruit." His wife was also there at that time, but he denied deducting her expenses. He did not identify any specific persons that he spoke to for business purposes, and he did not explain how this travel related to his employment with UMUC. Much of his testimony suggested that UMUC was unaware of his alleged activities in traveling to military bases and teaching

**[*19]** cyberwarfare. There is no evidence that petitioner complied with the UMUC travel policy quoted in our findings and much to suggest that he did not.

Petitioner also testified that he met with UMUC Dean Brady in Chicago on April 11, 2007, and incurred airfare and hotel expenses in connection with that trip. In that regard, his testimony was as follows: "I started to teach for National University who wanted to get in the military, and I documented I met with both of them, but UMUC authorized it. Now the way it's done is although UMUC had a policy, this was outside -- the cyber-warfare was not known to UMUC people at all". In view of this seemingly self-contradictory testimony, we cannot discern how the meeting related to petitioner's employment with UMUC rather than to some activity outside of his assigned duties.

Petitioner offered summaries of the log that he had prepared for trial, but the summaries did not constitute substantiation of items listed in the log. Many of the entries in the log are illegible, and many entries for different days appear to have been added at the same time. Contrary to petitioner's contention, the log does not appear to include the names of any students with whom he met.

Respondent argues that the log was created or reconstructed in preparation for trial rather than contemporaneously. Petitioner testified that the expense notations were prepared as of the time the tax return was filed, but even if true that

**[\*20]** testimony does not demonstrate that the entries were prepared at or near the time the expense was incurred, as required by the applicable regulations. See Park v. Commissioner, T.C. Memo. 2012-279, at \*4; Evan v. Commissioner, T.C. Memo. 2004-180. The log does not corroborate petitioner's generalized testimony, and only his testimony would validate the log. The absence of original records undermines the reliability of both the testimony and the log.

Petitioner acknowledged that some of the disallowed items might have been reimbursed by his employer, but he did not seek reimbursement. He testified:

> Why would I seek reimbursement for them? It is helping my promotion. It's helping my familiarity with the students who are there. It's helped me train generals and that to go to Kandahar in Iraq, and it's also helping me get -- stay as an associate professor. The contracts are renewed every year. So for promotion, associate professor, the comradery, the fact that they praised me for handling the conferences, I'm very proud of what I did.

Reimbursable expenses of employees are not deductible. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Brown v. Commissioner, 446 F.2d 926, 928 n.5 (8th Cir. 1971), aff'g T.C. Memo. 1970-253; Coplon v. Commissioner, 277 F.2d 534, 535 (6th Cir. 1960), aff'g T.C. Memo. 1959-34.

We cannot tell from the record which of the "other expenses" reported by petitioner would be subject to the heightened substantiation requirements of section

**[*21]** 274(d) or would be reimbursable by UMUC, because petitioner has not explained specific items. Even if we were authorized to approximate the amount of deductions to which petitioner might be entitled, the evidence is inadequate to make a reasonable allowance. We can estimate the amount of the deductible expense only when the taxpayer provides evidence sufficient to establish a reasonable basis upon which the estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Again, only petitioner's generalized assertions that he incurred and substantiated the expenditures are in evidence, and his statements are no more persuasive than assertions that his amended return was correct as filed. Tax returns do not establish the truth of the matters stated in them. See McLaine v. Commissioner 138 T.C. 228, 245 (2012); Lawinger v. Commissioner, 103 T.C. 428, 438 (1994); Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

We conclude that the disputed deductions cannot be allowed because they have not been substantiated.

Section 6662(a) Penalty

Section 6662(a) and (b)(1) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations. Section 6662(c) defines negligence as

**[\*22]** including any failure to make a reasonable attempt to comply with the provisions of the Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

Section 7491(c) imposes on respondent the burden of production with respect to the section 6662 penalty. On his original 2007 return, petitioner claimed as Schedule C expenses deductions allowable, if at all, only on Schedule A as unreimbursed employee expenses. For the reasons explained above, he is not entitled to those deductions respondent disallowed. Thus respondent's burden of showing that the penalty for negligence is appropriate has been met. See Higbee v. Commissioner , 116 T. C. 438, 446 (2001).

There is no suggestion in the record that petitioner sought competent tax advice or otherwise made a reasonable attempt to comply with the recordkeeping requirements related to his expenses. He simply insists that he substantiated his deductions and that respondent unreasonably disallowed them. He has not persuaded us that he has reasonable cause under section 6664(c) to avoid the penalty.

**[\*23]**  To give effect to respondent's concession,

<u>Decision will be entered</u>

<u>under Rule 155</u>.