T.C. Memo. 2010-200

UNITED STATES TAX COURT

CHERYL ELIZABETH HILL AND DON EDWARD HILL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16394-07L.                    Filed September 13, 2010.

Cheryl Elizabeth Hill and Don Edward Hill, pro sese.

<u>Derek B. Matta</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  The petition in this case was
filed in response to a Notice of Determination Concerning
Collection Action(s) Under Section 6320 and/or 6330 (notice of
determination).  Respondent later issued a supplemental notice of
determination.  The issue for decision is whether petitioners'

tax liability is properly reported on their 2004 Federal income tax return.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. When petitioners filed their petition, they resided in Texas.

Petitioners timely filed their 2004 Form 1040, U.S. Individual Income Tax Return, reporting tax due of $56,320 after consideration of withholdings. Petitioners failed to pay the tax reported to be due on their 2004 return.

Upon receipt of petitioners' 2004 return respondent assessed the reported tax due and issued to petitioners a notice of Federal tax lien filing.

Petitioners timely requested a hearing pursuant to section 6320. Respondent issued his notice of determination denying petitioners' request for relief.

Petitioners later submitted an amended Federal income tax return for 2004 claiming: (1) Losses for Cheryl Elizabeth Hill's (petitioner) "Real Estate Investor" business on Schedule C, Profit or Loss From Business; and (2) a $10,000 exception to the 10-percent additional tax on an early retirement distribution

pursuant to section 72(t) as first-time home buyers.[1]  On the amended return, after consideration of prior withholdings petitioners reported tax due of $15,384.

After consideration of the 2004 amended return respondent issued a supplemental notice of determination to petitioners denying in full their claims on the amended return.

During 2004 petitioner worked approximately 187 days as a librarian at a local elementary school.  She spent time after school and on weekends looking for and researching rental real estate properties.

## I.  Home Purchases

In 2003 petitioner purchased a home in Georgia, and petitioners, both of whom were retired at the time, intended to move into that home.  Circumstances changed in 2004, however, and petitioners instead decided to offer the home for rent.

Later in 2004 petitioner purchased a second home that was a manufactured home.  She originally purchased the home for herself and her husband but thereafter decided to offer this home for rent as well.  She encountered considerable difficulty, however, finding a suitable community for the manufactured home.  The first location proved unsatisfactory, and the second location was unable to support her fully electrical manufactured home.

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

Because of the inability to find a satisfactory manufactured home community, petitioner decided to purchase a tract of land for the home. Petitioner first purchased a 3-acre plot of land in Brazoria County, Texas, before realizing that she would be unable to place her home on the land because the home failed to comply with the county's wind restriction requirements. She purchased a second tract of land, an 11-acre plot, and was able to place her home on the land without any (apparent) complication. She transported her manufactured home four times in 2004 before finding property suitable for her home.

Petitioner was unable to secure renters for the Georgia home and the manufactured home in 2004; consequently, she did not earn income from renting property during 2004.

II. Retirement Account Withdrawals

In 2004 petitioners withdrew money from retirement accounts to fund various expenditures, including the purchase of a first home. Petitioners realized that when an early distribution from a retirement account is used to purchase a home by a first-time home buyer, $10,000 of the distribution is excepted from the 10-percent additional tax on early retirement account distributions. Accordingly, on their amended return petitioners claimed that a portion of a $65,000 distribution from Brazos Valley Credit Union qualified for the $10,000 exception. Respondent determined that

petitioners had already been granted the $10,000 exception for Franklin Templeton Bank & Trust distributions in 2004.

OPINION

## I. Evidentiary Matters

In general, the Court conducts trials in accordance with the rules of evidence for trials without a jury in the U.S. District Court for the District of Columbia, and accordingly, follows the Federal Rules of Evidence. Sec. 7453; Rule 143(a); Clough v. Commissioner, 119 T.C. 183, 188 (2002).

Respondent objects to several documents petitioners proffered into evidence.

### A. Narrative Logs

Petitioner proffered narrative logs reflective of her rental real estate activities throughout 2004. Respondent alleges that the logs constitute inadmissible hearsay.

Hearsay is a statement, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See Fed. R. Evid. 801(c).

Petitioner's narrative logs are reconstructive accounts she drafted after respondent initiated the lien action. These narrative logs constitute inadmissible hearsay unless some exception to the hearsay rule applies. Petitioner has not demonstrated that an exception to hearsay exists under which the

Court may admit the narrative logs; therefore, the narrative logs will be excluded.  See Fed. R. Evid. 803.

B.  Real Estate Lien Note

Respondent objects to petitioner's proffer of a real estate lien note on the basis of authenticity.[2]

Rule 901(a) of the Federal Rules of Evidence provides that "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Rule 901(b) of the Federal Rules of Evidence sets forth a nonexclusive list of "examples of authentication or identification conforming with the requirements of [Rule 901]", none of which are relevant here.

The real estate lien note comprises five pages but appears to consist of two separate incomplete documents.  When questioned regarding the inconsistency of the documents, petitioner explained that she just gave respondent what she had and that she had "no idea what that is."  The real estate lien note is incomplete and, because petitioner was unable to identify the documents or explain why the note appeared to consist of two separate incomplete documents, respondent's objection will be sustained.

---

[2]Respondent further alleged that this document violates the best evidence rule, but the Court need not consider this argument.

C.  Rate and Payment Schedule

Respondent objects to the admission into evidence of petitioner's mortgage rate and payment schedule on the basis of relevancy.[3]

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.

Petitioner seeks to introduce the rate and payment schedule, which she accessed in 2007, to demonstrate that she obtained a mortgage in 2004 for her 11-acre tract of land.  She attempted to demonstrate that although she accessed the document in 2007, the rate and payment schedule shows that she obtained a mortgage in 2004.  The line to which petitioner directs the Court, however, is blackened out and is therefore illegible.  This document does not contain legible data relevant to the 2004 tax year and is irrelevant for purposes of determining petitioner's 2004 tax liability.  See id.

II.  Burden of Proof

Section 7491(a)(1) provides that, subject to certain limitations, where a taxpayer introduces credible evidence with respect to a factual issue relevant to ascertaining the

---

[3]Respondent also objected to the admission of the document into evidence on the basis of hearsay, authenticity, and the best evidence rule.

taxpayer's tax liability, the burden of proof shifts to the Commissioner with respect to that issue. Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer if no contrary evidence were submitted. Ruckriegel v. Commissioner, T.C. Memo. 2006-78.

Section 7491(a)(1) applies only if the taxpayer complies with the relevant substantiation requirements in the Internal Revenue Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B). The taxpayer bears the burden of proving compliance with the conditions of section 7491(a)(2)(A) and (B). See, e.g., Ruckriegel v. Commissioner, supra. Petitioners neither propose facts to support their compliance with the conditions of section 7491(a)(2)(A) and (B) nor persuasively argue that respondent bears the burden of proof on any issue because of section 7491(a)(1). We therefore conclude that section 7491(a)(1) does not apply.

III. De Novo Review of Underlying Tax Liability

Under section 6320(a) the Secretary is required to notify the taxpayer in writing of the filing of a Federal tax lien and inform the taxpayer of his right to a hearing. Section 6330(a) similarly provides that no levy may be made on a taxpayer's

property or right to property unless the Secretary notifies the taxpayer in writing of his right to a hearing before the levy is made.  If the taxpayer requests a hearing under either section 6320 or 6330, a hearing shall be held before an impartial officer or employee of the Internal Revenue Service Office of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3).  At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).  Where the validity of the underlying tax liability is at issue in a collection review proceeding, the Court will review the matter de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Petitioners were entitled to challenge their underlying liability in the hearing, see, e.g., Montgomery v. Commissioner, 122 T.C. 1 (2004); therefore, the Court considers de novo the merits of petitioners' challenges.

The deductibility of the losses from petitioner's rental properties on Schedule C depends on whether she qualifies as a real estate professional under section 469(c)(7).

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212; however, section 469(a) generally disallows for the taxable year any passive activity loss. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity is treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4).

Under section 469(c)(7)(B), the rental activities of a taxpayer in the real property business (real estate professional) are not per se passive activities under section 469(c)(2) but are treated as a trade or business subject to the material participation requirements of section 469(c). Sec. 1.469-9(e)(1), Income Tax Regs.

Under section 469(c)(7)(B), a taxpayer qualifies as a real estate professional and is not engaged in a passive activity under section 469(c)(2) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during

such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Unless the taxpayer elects to aggregate his interests, each of the taxpayer's interests in real estate is treated as a separate activity.[4]  Sec. 469(c)(7)(A).

In the case of a joint return, the same spouse must satisfy each requirement.  Sec. 469(c)(7)(B).  Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not a per se passive activity under section 469(c)(2).  Instead, the real estate professional's rental activities would be treated as a passive activity under section 469(c)(1) unless the taxpayer materially participated in the activity.  Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial.  Sec. 469(h)(1).

With respect to the evidence that may be used to establish hours of participation, section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such

---

[4]Petitioner did not elect to aggregate her rental real estate interests.

participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Petitioner's rental real estate activity consisted of research on and development of two rental properties, a home purchased in 2003 and a home purchased in 2004, neither of which was originally planned as a rental property. Petitioner worked approximately 7.5 hours per day for 187 days, a total of 1,402.5 hours, as a school librarian in 2004. During those 187 working days, she alleged, she devoted an additional 6 hours of her time researching and developing her rental real estate activity. She further asserts that on each vacation day, each Saturday and Sunday, and each holiday, she devoted 8 hours to her rental real estate activity. She estimated working a total of 2,840 hours on her rental real estate activity during 2004. On the basis of petitioner's estimates, she worked an average of over 11 hours a day throughout 2004. Her estimate may have been bolstered by her assumption that there are "72 weekends in a year".

Petitioner claimed that she spent numerous hours each day researching real estate property and development. Despite her alleged extensive research, as discussed supra, petitioner encountered significant difficulty finding an appropriate location for her manufactured home. In addition, she presented

little evidence as to the activities she devoted to her Georgia home in 2004.

The methods petitioner used to approximate the time that she spent performing rental services during 2004 are not reasonable within the meaning of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. Petitioner's estimates are uncorroborated and do not reliably reflect the hours that she devoted to her rental real estate activity. Petitioner assigned hours to activities years later, in preparation for trial, that were based solely on her judgment as to how much time the activities must have taken her. This Court has previously noted that, while the regulations are somewhat ambiguous concerning the records to be maintained by taxpayers, they do not allow a postevent "ballpark guesstimate". Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

The following factors further diminish the credibility and accuracy of petitioner's claim: (1) The number of hours claimed appears excessive in relation to the tasks described, given the amount of time she worked as a librarian throughout the year; and (2) the Georgia property and the manufactured home were vacant during 2004.

Furthermore, the Court is not convinced that the hours petitioner claimed she spent on her rental real estate activity

accounted for more than one-half of the total hours of personal services she performed in a trade or business in 2004. She therefore does not qualify as a real estate professional pursuant to section 469(c)(7), and her rental activities during 2004 were passive activities pursuant to section 469(c)(2).[5] Consequently, petitioner's passive activity losses for 2004 are limited by section 469.

A taxpayer who "actively participated" in a rental real estate activity may deduct a maximum loss of $25,000 per year related to the activity. Sec. 469(i)(1) and (2). This exception is fully phased out, however, when adjusted gross income equals or exceeds $150,000. Sec. 469(i)(3)(A). Petitioners reported adjusted gross income of $312,981 for 2004; consequently, they are not entitled to deduct any of the losses associated with petitioner's rental real estate activity for the 2004 tax year.

Petitioner alleged that even if she is unable to deduct her rental real estate activity losses under section 469, she should be entitled to deduct the costs of her rental real estate activity under sections 212, 162 and/or 195.[6]

---

[5]The Court need not decide whether she materially participated in her rental real estate activity. See sec. 469(c)(4).

[6]Sec. 469 limits the deductions that would otherwise be permitted under secs. 162 and 212. Because petitioner's passive activity deduction is limited pursuant to sec. 469, petitioner may not deduct her expenses pursuant to secs. 162 and 212.

Petitioner's argument that she is entitled to a deduction pursuant to section 195 is misplaced.  Section 195 provides that no deduction shall be allowed for startup expenditures. Therefore, even if she incurred startup costs associated with a business, she would not be entitled to a deduction pursuant to section 195.

IV.  Penalty for Early Withdrawal From Pension

Section 72(t)(1) generally imposes a 10-percent additional tax on early distributions from "a qualified retirement plan (as defined in section 4974(c))," unless the distributions come within one of several statutory exceptions.

With respect to the distribution at issue, the parties do not dispute that petitioners' accounts were qualified employee retirement plans and that petitioner did not "roll over" her distributions pursuant to section 408(d)(3).  Therefore, in order for petitioner to prevail, she must show that the distributions fall under one of the exceptions under section 72(t)(2).

With respect to section 72(t), this Court has repeatedly held that it is bound by the list of statutory exceptions enumerated in section 72(t)(2).  See, e.g., Arnold v. Commissioner, 111 T.C. 250, 255-256 (1998); Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993); Swihart v. Commissioner, T.C. Memo. 1998-407; Pulliam v. Commissioner, T.C. Memo. 1996-354; Roundy v.

Commissioner, T.C. Memo. 1995-298, affd. 122 F.3d 835 (9th Cir. 1997).

As relevant herein, section 72(t)(2)(F) exempts distributions from the early withdrawal additional tax to the extent such distributions are qualified first-time home buyer distributions. See sec. 72(t)(2)(F), (8). The maximum amount of a distribution that may be treated as a qualified first-time home buyer distribution is $10,000. Sec. 72(t)(8)(B). Any amount of a distribution that petitioners received in excess of $10,000 remains subject to the 10-percent additional tax required by section 72(t). Id.

Respondent alleges that petitioners were already granted the $10,000 exception and petitioners presented no argument or evidence demonstrating that they had not already received the $10,000 exception as first-time home buyers. Accordingly, petitioners are not entitled to an additional $10,000 exception.

V. Interest Abatement[7]

Section 6404(e)(1) provides in pertinent part that the Secretary may abate the assessment of interest on: (1) Any

---

[7]Petitioners also requested an abatement of penalties, but the record does not show what penalties, if any, were assessed against them. Accordingly, the Court is unable to determine whether they are entitled to an abatement of penalties.

deficiency attributable to any error or delay by an officer or employee of the IRS in performing a ministerial or managerial act;[8] or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial or managerial act.

A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion by the Commissioner.  Sec. 301.6404-2(b)(2), Proced. & Admin. Regs. Section 6404(e) provides a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer and only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844 ("This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period.").

A managerial act is an administrative act that occurs during the processing of a taxpayer's case involving the temporary or

---

[8]Petitioners do not have a deficiency but rather an underpayment of tax.  See secs. 6211, 6404(e)(1)(A).  Therefore, petitioners' interest abatement claim will be determined under sec. 6404(e)(1)(B).  See secs. 6211, 6212(a).

permanent loss of records or the exercise of judgment or discretion relating to management of personnel.  Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

Petitioners allege that respondent's refusal to accept their 2004 amended return was without justification and a denial of due process.  Even though the Commissioner has administratively permitted their use, the filing of an amended return is not a matter of right, as there is no statutory provision expressly authorizing one to be filed.  Badaracco v. Commissioner, 464 U.S. 386, 393 (1984).  Acceptance of an amended return has repeatedly been held to be a matter which is within the discretion of the Commissioner.  Colvin v. Commissioner, T.C. Memo. 2004-67, affd. 122 Fed. Appx. 788 (5th Cir. 2005).

Furthermore, petitioners have failed to identify a ministerial or managerial delay by an IRS employee that caused them to forgo making payments on their income tax liability. They self-reported their income tax liability and chose to forgo making payments to pursue alternative avenues of relief. Accordingly, the Court is unable to conclude that any delay in payment on petitioners' account was not due in significant part to their own act of nonpayment.  See sec. 6404(e)(1)(B). Petitioners' request for an abatement of interest is denied.

As petitioners made no allegation in the petition that respondent abused his discretion in filing the disputed tax lien,

that the proposed method of collection is inappropriate, or that there is any spousal defense, the Court holds for respondent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.