T.C. Memo. 2017-65

UNITED STATES TAX COURT

ZANE W. PENLEY AND MONIKA J. PENLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13243-15.                          Filed April 17, 2017.

Zane W. Penley and Monika J. Penley, pro se.

<u>Philip E. Blondin</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  Respondent determined deficiencies in petitioners'
income tax for the taxable years 2010 through 2012.  Petitioners assert that
respondent erred for the taxable year 2012 in disallowing deductions for their

**[*2]** losses from their real estate activities under the section 469[1] passive activity loss rules because petitioner-husband (Mr. Penley) qualified as a real estate professional under section 469(c)(7) for that year.

After concessions by respondent,[2] the principal issue for decision is whether Mr. Penley qualified as a real estate professional for 2012. We find that he did not. We also determine that petitioners are not entitled to additional deductions for mortgage insurance premiums for 2011 and 2012 and that they are liable for an accuracy-related penalty under section 6662(a) for 2012.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The facts set forth in the stipulations of the parties with accompanying exhibits are incorporated

---

[1]All section references are to the Internal Revenue Code of 1986, as amended and in effect during the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All monetary amounts are rounded to the nearest dollar.

[2]Respondent conceded the other income adjustments of $43,500 and $157,557 for the 2011 and 2012 taxable years, respectively. Respondent also concedes that petitioners are entitled to vehicle depreciation expenses of $11,060 and $8,990 for the 2010 and 2011 taxable years, respectively. (We note that $8,990 is in excess of the amount claimed on petitioners' return for 2011.) Finally, respondent concedes that petitioners are entitled to deduct a capital loss of $3,000 for the 2012 taxable year.

**[*3]** herein by reference. At the time the petition was filed, petitioners resided in Colorado.

During 2012 Mr. Penley was a full-time employee of HSS, Inc. (HSS). From January through September 2012 Mr. Penley worked as an entry-level field sterilization technician, and from October through December 2012 he worked as a sales account representative. Although Mr. Penley performed many of his duties from petitioners' home, he would travel to client sites as needed. These trips could take under half an hour in the case of a local client, or they could on occasion require him to travel several hours throughout Colorado. In all, Mr. Penley spent at least 2,194 hours, including occasional overtime, during 2012 performing his duties for HSS.

During 2012, Mr. Penley was also actively engaged as a Colorado licensed real estate broker, and he had an active business marketing commercial and residential properties for several clients. Petitioners also conducted a rental real estate activity through a subchapter S corporation named Harvey Herbert, Inc. (HHI). Petitioners each owned 50% of HHI. During the taxable years 2010-12 HHI owned two single-family residential properties in Littleton, Colorado. Petitioners also held a warehouse in Sedalia, Colorado, in a self-directed individual retirement account through a limited liability company, Flying Bee

[*4] Ranch, LLC.  Petitioners spent time performing various tasks in the course of managing HHI's affairs such as finding tenants, managing the Corporation's finances, and making repairs to the properties.

The Sterne Property

Petitioners were introduced to Ms. Betty Lou St. Clair (Ms. St. Clair) through a mutual acquaintance, and they thereafter served as her real estate advisers.  On August 19, 2011, acting on petitioners' advice, Ms. St. Clair purchased a property on South Sterne Circle in Littleton, Colorado (Sterne property).  Ms. St. Clair made a downpayment of $4,212 on the Sterne property and executed a mortgage in her name for $161,888, the remaining balance of the purchase price.

The Sterne property is a duplex, with a front unit facing the street and a rear unit at the back of the lot.  Ms. St. Clair planned to live in the rear unit while renting out the front unit to supplement her income.  Because the rear unit was occupied by unauthorized tenants, neither Ms. St. Clair nor petitioners were able to inspect the rear unit throughly until shortly before closing.

When petitioners and Ms. St. Clair were finally able to inspect the rear unit of the property, it became apparent that it would not be a suitable residence for her.  The prior occupants left the property in a generally filthy condition, which

**[*5]** included damaged, buckled flooring, bare electrical wiring, and plumbing leaks. Ms. St. Clair never moved into either unit of the Sterne property and apparently found different living accommodations.

Petitioners may have had some legal obligation to Ms. St. Clair in connection with their role advising her with respect to the Sterne property.[3] However, even without a legal obligation, petitioners felt the need to protect their reputation as real estate brokers and advisers by making Ms. St. Clair whole on the transaction. And while the Sterne property was in poor condition, petitioners felt that the rear unit was structurally sound and could be rehabilitated.

On August 15, 2011, Ms. St. Clair as grantor executed a document entitled "Certification of The 'St. Clair Trust' Agreement" (certification document). Petitioners executed the certification document as trustees. The certification document recites that "[t]he 'St. Clair Trust' is a 'Grantor Trust' within the meaning of such term as used in the Internal Revenue Code, and all items of income and loss will be reported for tax purposes under the personal social security number of the Grantor, Betty Lou St. Clair." On August 19, 2011, Ms. St.

[3]Under Colorado law real estate brokers or transaction brokers do not have an affirmative duty to inspect property on behalf of their clients; however, they must discharge their responsibilities with a reasonable level of care. See Colo. Rev. Stat. Ann. secs. 12-61-805, 12-61-807 (West 2016).

**[*6]** Clair executed a quitclaim deed transferring the Sterne property to the "St. Clair Trust". The Sterne property has been titled in the name of the St. Clair Trust since that time.

On August 15, 2011, petitioners also executed a second document entitled "The 'St. Clair' A Revocable Trust Agreement" (trust document). The trust document generally purports to create a trust which includes the Sterne property as part of the trust estate. The trust document lists petitioners as trustees and makes no mention of Ms. St. Clair. Ms. St. Clair may never have actually seen this trust document, and she did not execute it herself. Petitioners prepared the certification document and the trust document themselves using forms they received from an "asset protection" attorney based in Utah and Florida.

On August 15, 2012, petitioners acting through HHI leased the front unit of the Sterne property to a tenant. During 2012 petitioners also spent significant time and effort repairing the damage to the rear unit of the Sterne property. Petitioners have performed substantially all of the work on the Sterne property themselves, including installing new flooring, wiring, and plumbing. However, even as late as 2015 work on the rear unit was still incomplete, and it has never been occupied or offered for rent since petitioners purchased the Sterne property.

[*7]   Petitioners, through HHI, have made all of the mortgage and insurance payments and have paid all of the property taxes on the Sterne property.  Ms. St. Clair has not received any rent from the front unit and has not paid for any of the expenses associated with renovating the rear unit of the Sterne property.  However, Ms. St. Clair remains liable for the mortgage she signed to purchase the Sterne property.  Petitioners have not assumed the mortgage, and they do not currently have a plan or a fixed time to refinance the Sterne property in their own names.

Evergreen Park

During April 2012, petitioners were contacted about the possibility of purchasing a property called Evergreen Park in Colorado Springs, Colorado.  Evergreen Park is a mobile home facility about an hour's drive from petitioners' home in Littleton, Colorado.  From April through August 2012, petitioners spent time performing various regulatory and due diligence activities with respect to Evergreen Park such as negotiating the purchase terms and securing financing.  Petitioners acquired Evergreen Park on August 15, 2012, and thereafter they made frequent trips to make improvements to the property.

[*8] Returns and Audit

Petitioners and HHI paid to have their Federal income tax returns for the taxable years 2010-12 prepared using information that petitioners provided. HHI filed a 2012 Form 1120S, U.S. Income Tax Return for an S Corporation, on which it reported a nonpassive ordinary business loss of $96,354. HHI's return did not report any passive loss from real estate activities. HHI reported this loss to petitioners on Schedules K-1, Shareholder's Share of Income, Deductions, Credits etc.

Petitioners filed a joint income tax return for 2012 on Form 1040, U.S. Individual Income Tax Return, on which they reported total income of $24,092 and taxable income of zero. Petitioners' individual return included a Schedule E, Supplemental Income and Loss, which reflected the $96,354 passthrough loss from HHI in two equal parts of $48,177, one for each petitioner, as a nonpassive loss.

Respondent examined petitioners' and HHI's returns for taxable years 2010 through 2012. Respondent determined that $56,863 of HHI's reported loss for 2012 was a passive loss from real estate activities and that Mr. Penley did not qualify as a real estate professional under section 469(c)(7). After making additional adjustments, respondent determined that petitioners' income for the

**[*9]** taxable year 2012 exceeded the phaseout threshold of section 469(i) and disallowed petitioner's deduction for the passive real estate loss in full. Respondent also determined that petitioners were liable for an accuracy-related penalty under section 6662(a) for 2012.

In response to the notice of deficiency petitioners timely filed a petition challenging respondent's determination (inter alia) that Mr. Penley was not a real estate professional for the 2012 taxable year.

OPINION

As a general rule, the Commissioner's determination in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although section 7491(a) may shift the burden of proof to the Commissioner in specified circumstances, petitioners have not established that they meet the requirements under section 7491(a)(1) and (2) for such a shift. Consequently, the burden of proof remains on petitioners.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deductions. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required

**[\*10]** to identify each deduction, maintain adequate records, substantiate each deduction, and show that they have met all requirements. Sec. 6001; <u>Roberts v. Commissioner</u>, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.

I. <u>Real Estate Activity</u>

Taxpayers are generally allowed to deduct business and investment expenses under sections 162 and 212, but section 469 puts strict limits on current deductibility if a taxpayer incurs those expenses in a "passive activity". Sec. 469(a). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A passive activity loss is the excess of the aggregate losses from all passive activities for the year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2). There are special rules under section 469(c)(7) that allow a taxpayer in the real property business (real estate professional) to deduct rental losses against other income provided that the taxpayer materially participates in the rental activity. <u>See also</u> sec. 1.469-9(e)(1), Income Tax Regs.

Petitioners challenge respondent's determination that a portion of the loss reported by HHI for 2012 was a passive loss. They contend that Mr. Penley

**[\*11]** qualified as a real estate professional under section 469(c)(7) and that he materially participated in his real estate activities.  Petitioners do not contend that Mrs. Penley qualified as a real estate professional.

Under section 469(c)(7)(B), a taxpayer qualifies as a real estate professional and a real estate activity of the taxpayer is not a per se passive activity under section 469(c)(2) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the above requirements are satisfied if either spouse separately satisfied these requirements.  Sec. 469(c)(7)(B).  Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are exempt from being a per se passive activity under section 469(c)(2).  Instead, the real estate professional's rental activities would be subject to the material participation requirements of section 469(c)(1).  Sec. 1.469-9(e)(1), Income Tax Regs.

[*12] Petitioners claim that Mr. Penley spent approximately 2,520 hours on his real estate activities during the taxable year 2012. Approximately 1,000 of the claimed hours relate to the rehabilitation of the rear unit of the Sterne property.[4]

II. Substantiation of Hours Worked

We turn to the question of whether petitioners have substantiated their claim that Mr. Penley worked more hours in his real estate activities than he did in his employment with HSS. While we acknowledge that Mr. Penley expended significant efforts on his real estate activities during 2012, we are unable to credit his testimony concerning the number of hours he spent on those activities.

A taxpayer can use "any reasonable means" to prove the extent of his or her participation in the real estate activities. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Reasonable means may include

---

[4]Respondent argues that petitioners may not count toward Mr. Penley's real estate professional status for 2012 the time spent to rehabilitate the rear unit of the Sterne property because petitioners did not have an ownership interest in the Sterne property sufficient to allow them to have materially participated in the activities of this unit. See sec. 1.469-5(f)(1), Income Tax Regs. We note that even though petitioners did not own the Sterne property, Mr. Penley's rehabilitation efforts had a strong nexus to his real estate brokerage trade or business, in which he participated. See 469(c)(7)(C); sec. 1.469-5(f)(1), Income Tax Regs. We need not decide whether petitioners are entitled to count the time spent rehabilitating the Sterne property towards real estate professional status because we find that petitioners have not adequately substantiated the total time Mr. Penley spent on his real estate activities.

[*13] identifying of services performed over a period of time and the approximate number of hours spent performing such services by using appointment books, calendars, or other narrative summaries. Id. Although contemporaneous records are not required, the use of a "postevent 'ballpark guesstimate'" is not sufficient to prove participation in a real estate activity. Fowler v. Commissioner, T.C. Memo. 2002-223, 84 T.C.M. (CCH) 281, 286 (2002); see also Mowafi v. Commissioner, T.C. Memo. 2001-111, 81 T.C.M. (CCH) 1605, 1606 (2001); Rapp v. Commissioner, T.C. Memo. 1999-249, 78 T.C.M. (CCH) 175, 177-178 (1999) (holding that noncontemporaneous documents coupled with testimony are insufficient methods of proof).

Petitioners' primary substantiation at trial for the hours Mr. Penley worked during 2012 was a monthly calendar. The calendar indicates the property where Mr. Penley worked on a particular day and contains a brief description of the work performed, an estimate of the number of hours worked, and the number of miles driven to and from the property.

We find that this calendar greatly exaggerates the time Mr. Penley spent on his real estate activities. Generally Mr. Penley claims, for 2012, to have worked on his real estate activities 10-14 hours on each Saturday and Sunday during 2012 and an additional 4-6 hours most weekdays, in addition to another full-time job.

**[*14]** Petitioners claim Mr. Penley worked 2,520 hours on his real estate activities. To do so he would have had to work a total 4,714 hours (i.e., 2,194 for HHS + 2,520 on his real estate activities) in 2012. That means if he worked every day, he would need to have averaged 12.88 total hours per day (i.e., $4,712 \div 366 = 12.88$). We conclude the calendar is untrustworthy, and we will not naively accept it to reach the result petitioners seek.

Virtually all of the entries are rounded to the nearest hour or half-hour, do not specify a start or end time for the work, include the time spent driving to and from the property, and do not separate out any time for meals or other breaks. See Merino v. Commissioner, T.C. Memo. 2013-167, at *8-*12; Rapp v. Commissioner, 78 T.C.M. (CCH) at 177-178 (discounting testimony that lacked specifics about time work was performed); Pohoski v. Commissioner, T.C. Memo. 1998-17, 75 T.C.M. (CCH) 1574, 1579 (1998) (noting that the large number of hours claimed seemed implausible, especially given that the calendar did not contain breaks for meals or leisure time with family).

Corroborating evidence, such as credit card statements, phone bills, and emails relating to the purchase of Evergreen Park, demonstrates meaningful real estate activity by petitioners during 2012. However, petitioners have not provided the Court with a sufficient explanation to reconcile this documentary evidence of

[*15] their activities such as a brief email, a phone call, or a hardware store purchase with the large blocks of time (often 4 hours to 14 hours) shown on the calendar. See Hill v. Commissioner, T.C. Memo. 2010-200, 100 T.C.M. (CCH) 220, 223 (2010) (finding that the excessive hours claimed by the taxpayer, relative to the tasks performed, diminished the credibility of the taxpayer's estimates), aff'd, 436 F. App'x 410 (5th Cir. 2011). We find that petitioners' calendar does not fall within the regulation's "any reasonable means". See sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra.

On the record before us we conclude that petitioners have not sufficiently substantiated their claim that Mr. Penley spent more time during 2012 in his real estate activities than in his employment with HSS, as required by section 469(c)(7)(B)(i). See Merino v. Commissioner, at *8-*12. Accordingly, we hold that petitioners have not demonstrated that Mr. Penley was a real estate professional for 2012.

III. Mortgage Insurance Premiums

At trial petitioners asserted they are entitled to additional deductions for mortgage insurance premiums of $2,602 and $1,821 for the taxable years 2011 and 2012, respectively. It appears as we review the record that these mortgage insurance premiums were in fact deducted on HHI's tax returns for both years, and

**[*16]** respondent did not dispute those deductions in his notice of deficiency. We therefore find that petitioners are not entitled to additional deductions for those amounts.

## IV. Accuracy-Related Penalty

The Commissioner bears the burden of production with respect to the section 6662(a) accuracy-related penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty is appropriate.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax to which the section applies. Respondent asserts that petitioners' 2012 underpayment was attributable to negligence or disregard of rules and regulations. See sec. 6662(b)(1).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Respondent has met his burden of production by showing that Mr. Penley was not a real estate professional for 2012 as claimed on petitioners'

**[\*17]** return.  Petitioners bear the burden of proving a defense to the penalty.  See

Higbee v. Commissioner, 116 T.C. at 447.

There is an exception to the section 6662(a) penalty when a taxpayer can

demonstrate that the taxpayer (1) had reasonable cause for the underpayment and

(2) acted in good faith with respect to the underpayment.  Sec. 6664(c)(1); sec.

1.6664-4(a), Income Tax Regs.  A determination of whether a taxpayer acted with

reasonable cause "is made on a case-by-case basis, taking into account all

pertinent facts and circumstances."  Sec. 1.6664-4(b), Income Tax Regs.  The most

important factor "is the extent of the taxpayer's effort to assess the taxpayer's

proper tax liability."  Id.  Circumstances indicating that a taxpayer acted with

reasonable cause and in good faith include "an honest misunderstanding of fact or

law that is reasonable in light of all of the facts and circumstances, including the

experience, knowledge, and education of the taxpayer."  Id.

Reliance on the advice of a tax professional may, but does not necessarily,

establish reasonable cause and good faith for the purpose of avoiding a section

6662(a) penalty.  Sec. 1.6664-4(b)(1), Income Tax Regs.; see also United States v.

Boyle, 469 U.S. 241, 251 (1985) (reliance on an accountant or attorney as to a

matter of tax law may be reasonable); Canal Corp. v. Commissioner, 135 T.C. 199,

218 (2010) ("The right to rely on professional tax advice, however, is not

[*18] unlimited."). To avoid liability for a section 6662(a) penalty on the basis of reliance on a tax professional, a taxpayer must show that "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 n.8 (9th Cir. 2005) (quoting with approval the above three-prong test), aff'g 121 T.C. 89 (2003). In addition, "the advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person". Sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

The fact that petitioners had a professional prepare their returns does not, in and of itself, prove that they acted with reasonable cause and in good faith. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99-100. Without deciding whether petitioners' chosen tax adviser was competent so as to justify reliance, we observe that petitioners' tax adviser evidently relied on their representation that they worked some 2,520 hours in their real estate activities

**[*19]** during the taxable year 2012.  Petitioners provided a very liberal estimate of their hours to their tax return preparer, and so they cannot shift to their preparer responsibility for the returns that were prepared on the basis of that apparent exaggeration.  <u>See</u> sec. 1.6664-4(c)(1)(i), (ii) Income Tax Regs.  Petitioners have not proven reasonable cause for their underpayment.  Thus, this Court concludes petitioners are liable for the section 6662(a) accuracy-related penalty for 2012.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.